Ronald F. Price (5535)
John P. Snow (10735)
Alan W. Dunaway (13514)
Steven W. Garff (13707)
PRICE PARKINSON & KERR, PLLC
5742 West Harold Gatty Drive
Salt Lake City, UT  84116
Telephone: (801) 530-2900
ronprice@ppktrial.com
johnsnow@ppktrial.com
alandunaway@ppktrial.com
stevengarff@ppktrial.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT THE DISTRICT OF UTAH
## CENTRAL DISTRICT

| | |
|---|---|
| SANMEDICA INTERNATIONAL, LLC, a Utah Limited Liability Company; SANMEDICA IP HOLDINGS, LLC, a Nevada Limited Liability Company; and BASIC RESEARCH, LLC, a Utah Limited Liability Company; <br><br> Plaintiffs, <br><br> vs. <br><br> SHAKIR AHMED, an individual; JOHN DOES 1-20, individuals; JANE DOES 1-20, individuals; and XYZ COMPANY, a business entity of unknown form transacting business within the State of Utah; <br><br> Defendants. | **COMPLAINT** <br><br> Case No. 2:26-00220 <br><br> Judge |

Plaintiffs SanMedica International, LLC ("SanMedica"), SanMedica IP Holdings, LLC ("SanMedica IP"), and Basic Research, LLC ("Basic") (collectively sometimes referred to as "Plaintiffs") for causes of action against Defendants, complain and allege as follows:

## OVERVIEW

Plaintiffs are leaders in the dietary supplement industry, marketing and selling various dietary supplement products under the federally registered trademark SEROVITAL, including without limitation SanMedica's SeroVital® and SeroVital® Advanced products ("SanMedica's Products" or "SeroVital"). These products have achieved national and international recognition and Plaintiffs have built a strong reputation in the industry for selling novel formulations containing high-quality ingredients. Plaintiffs rely on competent and reliable scientific and/or clinical evidence to ensure that their products are safe and effective. Plaintiffs invest substantial sums of money to assure that their products are manufactured to the highest of standards so to meet or exceed the quality and other characteristics of the compounds identified by competent and reliable scientific evidence necessary to achieve the desired efficacy. Moreover, Plaintiffs invest substantial sums of money to ensure that their products are manufactured, stored, and shipped according to Good Manufacturing Practices set forth by the United States Food and Drug Administration. Each SeroVital product is packaged in trademarked, copyrighted packaging that bears Plaintiffs' unique and distinctive trade dress. SeroVital products are sold to consumers through authorized retailers, such as Costco, GNC, and Ulta, as well as via authorized internet sellers, including directly from Plaintiffs' websites and on Amazon.com.

As alleged more fully below, Defendants are engaged in the distribution and sale of counterfeit SeroVital products in packaging that mimics Plaintiffs' copyrighted packaging and simulates Plaintiffs' distinctive trade dress. These counterfeit products have lot numbers and UPC codes that do not exist in Plaintiffs' records. By their very nature, the counterfeit SeroVital products distributed and sold by Defendants are not subject to Plaintiffs' rigorous quality control

program. Not only is the packaging counterfeit, the capsules and tablets contained in the packaging are counterfeit.

*REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF:* Plaintiffs are suffering irreparable harm as a direct result of Defendants' advertising, distribution and sale of counterfeit SeroVital products. If not enjoined by this Court, Defendants will continue to unlawfully advertise and sell the counterfeit SeroVital products, thereby causing Plaintiffs irreparable injury, for which they have no adequate remedy at law including, but not limited to, the loss of goodwill and impairment of Plaintiffs business relationships with their authorized product manufacturers and authorized resellers. The law not only encourages, but requires Plaintiffs to be vigilant in protecting their trademark interests on pain of losing exclusive rights. Accordingly, time is of the essence.

## PARTIES

1.     Plaintiff SanMedica International, LLC is a limited liability company, organized and existing under the laws of the State of Utah. SanMedica's principal place of business is in the State of Utah. SanMedica sells various products under the SeroVital® brand, including SeroVital® and SeroVital® Advanced.

2.     Plaintiff SanMedica IP Holdings, LLC is a limited liability company, organized and existing under the laws of the State of Nevada. SanMedica IP owns the intellectual property rights related to the SeroVital® brand, including without limitation the SEROVITAL trademark.

3.     Plaintiff Basic Research, LLC is a limited liability company organized and existing under the laws of the State of Utah, with its principal place of business in the State of Utah. Basic is the exclusive distributor of SeroVital products to authorized sellers.

4.     Defendant Shakir Ahmed ("Ahmed") is an individual who, upon information and belief, resides at 4511 Bluff Oak Loop, Kissimmee, FL 34746.

5.     John Does 1 through 20 are persons whose identities are currently unknown, but on information and belief, may have liability for, and may have acted in concert with other defendants in the performance of, the acts and/or omissions giving rise to the causes of action pled herein.

6.     Jane Does 1 through 20 are persons whose identities are currently unknown, but on information and belief, may have liability for, and may have acted in concert with other defendants in the performance of, the acts and/or omissions giving rise to the causes of action pled herein.

7.     XYZ Company is an entity whose identity is currently unknown, including without limitation corporation, limited liability company, partnership, holding company, parent company, subsidiary, and/or DBA, that may have liability for and may have acted in concert with other defendants in the performance of, the acts and/or omissions giving rise to the causes of action pled herein.

## JURISDICTION AND VENUE

8.     The Court has jurisdiction over the subject matter of this action pursuant to the Lanham Act, 15 U.S.C. § 1125, and 28 U.S.C. §§ 1331 and 1338.

9.     The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. The state law claims are integrally related to the federal claims and arise from a common nucleus of operative facts such that resolution of all claims in this Court furthers judicial economy.

10.     The Court has personal jurisdiction over Ahmed because he (a) has transacted business within the State of Utah by advertising and selling counterfeit SeroVital products in Utah; (b) has caused tortious injury within the State of Utah by, *inter alia,* engaging in acts of trademark infringement; and (c) is doing business in Utah by consistently and systematically entering into contracts with residents of this jurisdiction that involve the knowing and repeated transmission of

computer files over the internet regarding sales of counterfeit SeroVital dietary supplement products. Ahmed has purposefully and deliberately advertised and sold these products on eBay to residents of the State of Utah. Ahmed accordingly is subject to the personal jurisdiction of this Court under Utah Code Ann. § 78B-3-205.

11.     The court has personal jurisdiction over all other defendants under Utah's long-arm statute, Utah Code Ann. § 78B-3-205. All other defendants have, upon information and belief, (i) transacted business within this State by advertising and selling merchandise in the State of Utah, (ii) have contracted to supply goods in the State of Utah; and (iii) have caused injury within the State of Utah.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c).

## II.  GENERAL ALLEGATIONS

13.     Plaintiffs SanMedica and Basic Research are leaders in the dietary supplement products industry. SanMedica and Basic Research have earned a reputation in the industry for selling novel formulations containing high-quality ingredients.

14.     SanMedica and Basic Research invest substantial sums of money to assure that their products are manufactured, stored, and shipped according to the highest standards, including the standards set forth by the United States Food and Drug Administration's Good Manufacturing Practices.

15.     Each of SanMedica's Products is packaged in trademarked, copyrighted packaging that bears unique and distinctive trade dress.

16.     Customers can find SanMedica's Products mentioned in the media, sold in authorized retail stores, and distributed over the internet directly from Plaintiffs or from authorized

resellers. For example, SanMedica' Products include, but are not limited to, SeroVital® and SeroVital® Advanced dietary supplement products.

17. SeroVital® consists of a patented blend of amino acids and schizonepeta. A single serving of SeroVital® consists of four distinctive yellow capsules which contain the various ingredients.

18. SeroVital® Advanced is a two-part system which consists of the original SeroVital® supplement which is to be taken at night, and a second, different blend of dietary supplement ingredients, which are to be taken in the morning. This second, different blend of dietary supplements come in the form of white and red tablets.

19. SanMedica's Products are distinctively packaged to indicate that they are produced by Plaintiffs. This proprietary trade dress consists of: a) the SeroVital® trademarked brands; b) the product name in large type appearing on the packaging; c) SeroVital's distinct color scheme; and d) a statement indicating that they are clinically tested products to provide a specific health benefit.

20. The SeroVital® dietary supplement product formula has been clinically studied at a major United States research university and shown to increase natural human growth hormone production.

21. The SanMedica's Products are packaged in trademarked, copyrighted packaging that bears SeroVital's unique and distinctive trade dress.

22. SeroVital's outer packaging is a specific sized card stock box which bears the SEROVITAL trademark in a unique font, along with Plaintiff's distinctive trade dress, imagery and advertising claims.

23.     SeroVital® Advanced's outer packaging has come in two different forms. The older version of the packaging a specific sized card stock box which bears the SEROVITAL trademark in a unique font, along with Plaintiff's distinctive trade dress, imagery and advertising claim. The current version of SeroVital® Advanced's outer packaging is an entirely different specific sized card stock box which bears the SEROVITAL trademark in a unique font, along with Plaintiff's distinctive trade dress, imagery and advertising claims.

24.     The numerous eBay sellers who have been selling counterfeit versions of the SeroVital Advanced product have advertised and sold counterfeit versions of both the old and the current versions of the SeroVital Advanced packaging.

25.     Plaintiffs have expended a great deal of time, effort, and money developing their intellectual property rights in connection with the SeroVital Products, including the trademark, packaging, trade dress, copyrighted labels, copyrighted package insert, and copyrighted advertisements that have appeared in print, on television, on digital media, and on Plaintiffs' website (www.serovital.com).

26.     SanMedica IP is the current, active, and exclusive owner of all SEROVITAL legally protected trademarks, trade dress, and copyrights.

27.     SanMedica IP is the record owner of SEROVITAL as a trademark for dietary supplement products in the United States Patent and Trademark Office under Registration No. 4,339,758, which is active and issued May 21, 2013. Registration No. 4,339,758 is *prima facie* evidence of the validity and ownership thereof and is constructive notice of ownership of the mark SEROVITAL, as provided by §§ 7(b) and 22 of the Federal Trademark Act, 15 U.S.C. §§ 1057(b) and 1072. A true copy of Registration No. 4,339,758 is attached hereto as Exhibit 1.

28.     SanMedica IP has granted an exclusive license to SanMedica to use all intellectual property in connection with the marketing and sale of dietary supplement products, including without limitation the trademark SEROVITAL and the copyrighted packaging material.

29.     SanMedica IP has granted an exclusive license to Basic to use all intellectual property in connection with the distribution of dietary supplement products to authorized resellers, including without limitation the trademark SEROVITAL and the copyrighted packaging material.

30.     By virtue of said licenses, Plaintiffs are related companies within the meaning of § 5 of the Federal Trademark Act, 15 U.S.C. § 1055. Consequently, all use of the trademarks SEROVITAL in connection with dietary supplement products and said copyrighted materials by SanMedica inure to the benefit of SanMedica IP.

31.     SanMedica sells its products direct to consumers and through authorized resellers, to whom SanMedica has licensed or otherwise authorized to use Plaintiffs' trademarks, trade dress, and copyrights to promote the SeroVital products. These authorized resellers, who are selected based on their reputation and their proven ability to service customers, are trained in and agree to meet Plaintiffs' quality control standards for storing and selling the SeroVital Products.

32.      Defendants are not authorized resellers or authorized manufacturers of the SeroVital products.

33.     Notwithstanding Plaintiffs' well-known and prior established rights in the trademark SEROVITAL, Defendants are engaged in the advertising, offering for sale, distribution and sale of dietary supplement products bearing a counterfeit reproduction of the trademark SEROVITAL.

34.     Defendants' counterfeit SeroVital dietary supplement products are offered for sale on eBay by Defendants and sold to residents of the State of Utah.

35.    Rather than using Plaintiff's unique and distinctive card stock box, Defendants are selling a counterfeit reproduction of the SEROVITAL trademark on replica card stock boxes, which contain capsules of what purports to be Plaintiffs' SeroVital and SeroVital Advanced products. True and accurate images of Defendants' counterfeit SeroVital and SeroVital Advanced products are attached hereto as Exhibits 2 and 3, respectively.

36.    Defendants' counterfeit boxes, however, have multiple differences. The differences in the counterfeit version of SeroVital include, without limitation: 1) a darker yellow coloring than the yellow hues on authentic SeroVital®; 2) a different sized card stock box than authentic SeroVital® packaging; 3) the material for the card stock box is different than authentic SeroVital®; 4) different fonts and formatting than what authentic SeroVital® has on its box; 5) the box seal is different than authentic SeroVital®; 6) an incorrect UPC code—a UPC code which Plaintiffs have only used for the SeroVital® Advanced product; 7) lot numbers that do no coincide with any lot number for authentic SeroVital® products, on both the box and on individual dose packaging; 8) the expiration date on the packing is an incorrect expiration date; 9) the silver line on the bottom is wider than the silver line found on authentic SeroVital® products; 10) the individual packets containing the daily 4-capsule dose are different that those in authentic SeroVital® products; and 11) multiple typographical errors. True and accurate images of Plaintiffs' authentic SeroVital® product are attached hereto as Exhibit 4.

37.    The differences in the counterfeit version of SeroVital Advanced include, without limitation: 1) a darker yellow coloring than the yellow hues on authentic SeroVital® Advanced; 2) a much darker orange or even red coloring around the bottom of each side panel of the box; 3) a grey instead of white capsule representation on the front and back panels a different sized card stock box than authentic SeroVital® packaging; 4) the word "ADVANCED" in black instead of

silver on the side panel and top of the box; 5) the material for the card stock box is different than authentic SeroVital® Advanced; 6) different fonts and formatting than what authentic SeroVital® Advanced has on its box; 7) the box seal is different than authentic SeroVital® Advanced; 8) the silver line on the bottom is wider than the silver line found on authentic SeroVital® Advanced products; 9) different fonts and formatting than what is found on authentic SeroVital® Advanced products; 10) the individual daily packets in plastic where authentic SeroVital® Advanced daily packets are loose in the box; and 11) multiple typographical errors. True and accurate images of Plaintiffs' authentic SeroVital® Advanced product are attached hereto as Exhibit 5.

38.    In addition to the discrepancies on the packaging, the contents of the counterfeit SeroVital dietary supplement products are fake.

39.    There are no mechanisms to control the way in which these counterfeit SeroVital products are manufactured, stored or sold. For example, the unauthorized sellers can create packaging to make it appear that out-of-date merchandise has not expired. The unauthorized manufacturers may produce a worthless product that does not contain the patented formula—or even the same ingredients—as authentic SeroVital. The actions of these unauthorized manufacturers and sellers have significantly impaired the goodwill and reputation of Plaintiffs.

40.    Plaintiffs have taken steps to locate the unauthorized sellers of the Products and their sources for the Products. Plaintiffs have purchased the Products online from the unauthorized sellers in an attempt to identify sellers by return address. Plaintiffs have conducted investigations to determine the source of the unauthorized, counterfeit products.

41.    Ahmed is the owner of eBay seller "amys-leather-store".

42.    Through amys-leather-store, Ahmed has sold counterfeit versions of SeroVital and SeroVital Advanced. True and accurate images product listings and counterfeit SeroVital sold by amys-leather-store are attached hereto as Exhibits 6 and 7.

43.    Ahmed resides in Kissimmee, Florida.

44.    However, eBay seller "amys-leather-store" uses a third-party shipper located in Cypress, Texas to ship counterfeit SeroVital to unknowing customers. This third-party shipper fulfills orders and ships counterfeit versions of SanMedica's Products for many different eBay sellers.

45.    At least some of the counterfeit SeroVital products sold by eBay seller "amys-leather-store" ship to consumers using the name "USA Warehouse" on the return label with a return address of 19823 Crested Hill Lane in Cypress, Texas.

46.     Defendants are not authorized by any right, assignment, license or permission, to sell SanMedica's Products.

47.    Defendants are not authorized by any right, assignment, license or permission, to use Plaintiffs' trademarks, trade dress, or copyrights, specifically Plaintiffs' SEROVITAL trademark.

48.    Defendants' unauthorized use of Plaintiffs' trade dress confuses consumers and causes prejudice to Plaintiffs' interests.

## FIRST CAUSE OF ACTION
### (Lanham Act -- Trademark Infringement)

49.    Plaintiffs repeat and reallege the preceding paragraphs of this Complaint as if fully set forth herein.

50.    Defendants have intentionally engaged in the offering for sale, distribution and sale of counterfeit SeroVital dietary supplement products in interstate commerce and in the State of

Utah with knowledge that such goods are sold under counterfeit reproductions of Plaintiffs' trademark SEROVITAL.

51.     Defendants have intentionally used and are using counterfeit reproductions of the trademark SEROVITAL for the purpose of exploiting and trading upon the substantial goodwill and reputation of Plaintiffs, symbolized by the trademark SEROVITAL and to enable Defendants to misrepresent their products as emanating from or otherwise sponsored or approved by Plaintiffs.

52.     Defendants' use of counterfeit reproductions of the trademark SEROVITAL in the advertising, offering for sale, distribution and sale of dietary supplement products is likely to cause the public to believe, contrary to fact, that the dietary supplement product sold under said counterfeit reproductions are manufactured by or emanate from, or are otherwise sponsored or approved by Plaintiffs. Defendants' use of these counterfeit reproductions of the trademark SEROVITAL accordingly infringes Plaintiffs' exclusive rights in the trademark SEROVITAL under § 32(1) of the Federal Trademark Act, 15 U.S.C. § 1114(1), and at common law.

53.     Defendants had actual knowledge of Plaintiffs' prior use of and exclusive rights in the trademark SEROVITAL when they began the advertising, offering for sale, distribution and sale of dietary supplement products bearing counterfeit reproductions of the trademark SEROVITAL, and thus have willfully and deliberately infringed Plaintiffs' exclusive trademark rights.

54.     Plaintiffs have sustained monetary damages in an amount to be determined at trial, as the proximate result of Defendants' acts of trademark infringement.

55.     Unless enjoined by this Court, Defendants will continue to infringe the trademark SEROVITAL by the advertising, offering for sale, distribution and sale of dietary supplement products under counterfeit reproductions of the trademark SEROVITAL, thereby deceiving the

public and causing Plaintiffs immediate and irreparable injury, including the loss or impairment of goodwill and lost customers, for which they have no adequate remedy at law. Defendants jointly and severally are engaged in acts of trademark infringement under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

**SECOND CAUSE OF ACTION**
**(Lanham Act – Unfair Competition)**

56.     Plaintiffs repeat and reallege the preceding paragraphs of this Complaint as if fully set forth herein.

57.      Defendants' advertising, offering for sale and sale of dietary supplement products under counterfeit reproductions of the trademark SEROVITAL in the manner hereinabove alleged, constitute the use of a false designation of origin within the meaning of § 43(a) of the Federal Trademark Act, 15 U.S.C. § 1125(a), which is likely to confuse or deceive the public as to the source, sponsorship and approval  of said products, thereby causing Plaintiffs immediate and irreparable damage for which they have no adequate remedy at law.

58.     The natural and probable tendency and effect of Defendants' use of counterfeit reproductions of the trademark SEROVITAL is to enable Defendants to confuse or deceive the public and others by passing off their dietary supplement products as manufactured by or emanating from, or otherwise sponsored or approved by Plaintiffs. Such conduct constitutes unfair competition with Plaintiffs under the Lanham Act, 15 U.S.C. § 1125(a) and is causing and, unless enjoined, will continue to cause Plaintiffs immediate and irreparable injury for which they have no adequate remedy at law.

59.     Defendants' sales of counterfeit SeroVital products are damaging to Plaintiffs because they are likely to influence consumer purchasing decisions in that consumers are drawn

to the lower price of the counterfeit products, giving Defendants an unfair competitive advantage over Plaintiffs' and their authorized resellers.

60.     As a result of Defendants unfair competitive advantage, Plaintiffs have been and continue to be injured. Plaintiffs' injuries include lost sales, copyright infringement and dilution, and damage to Plaintiffs' existing and potential business relations, including without limitation their relationships with their direct customers and their authorized resellers.

61.     As such, Defendants' unlawful advertisements constitute unfair competition under the Lanham Act, 15 U.S.C. § 1125(a).

62.     As a result of Defendants' conduct and damages suffered by Plaintiffs, Plaintiffs are entitled to an injunction restraining Defendants, and any of their agents, employees, directors, or persons acting in concert with them, from engaging in any behavior which constitutes unfair competition under the Lanham Act. Plaintiffs are also entitled to Defendants' profits, treble the damages sustained by Plaintiffs, and their costs and attorneys' fees pursuant to 15 U.S.C. § 1117.

### THIRD CAUSE OF ACTION
### (Lanham Act – False Advertising)

63.     Plaintiffs repeat and reallege the preceding paragraphs of this Complaint as if fully set forth herein.

64.     Defendants' use of eBay to sell counterfeit SeroVital products, and therefore falsely advertising that Defendants are selling authentic SeroVital products, is in violation of the Lanham Act § 43 (a)(1), 15 U.S.C. § 1125 (a)(1).

65.     Upon information and belief, Defendants' false statements, including the advertising of the product on eBay, actually deceives or has the tendency to deceive a substantial segment of their audience, who believe they are purchasing authentic SeroVital products. Defendants' false and misleading statements are material and likely to influence the purchasing

Complaint

decisions of actual and prospective purchasers of Defendants' products and/or SanMedica's Products.

66.    Upon information and belief, Defendants' false advertising has diverted sales at the expense of Plaintiffs and/or has lessened the goodwill enjoyed by SanMedica's Products; especially those customers who have purchased from Defendant and discovered that the product they received from Defendant does not have the effects of authentic SeroVital Products.

67.    Upon information and belief, Defendants' acts and false advertising have deceived and, unless restrained, will continue to deceive the public, including consumers and retailers, and has injured and, unless constrained, will continue to injure Plaintiffs and the public, including consumers and retailers, causing damages to Plaintiffs in an amount to be determined at trial and other irreparable injury to the goodwill and reputation of SanMedica's Products.

68.    Upon information and belief, Defendants' acts of false advertising are willful, intentional, and egregious and make this an exceptional case within the meaning of 15. U.S.C. §1117(a).

69.    Plaintiffs have no adequate remedy at law to compensate them for all the damages the Defendants' wrongful acts have caused and will cause.

**FOURTH CAUSE OF ACTION**
**(Copyright Violation)**

70.    Plaintiffs repeat and reallege the preceding paragraphs of this Complaint as if fully set forth herein.

71.    The packaging for Defendants' counterfeit SeroVital products unlawfully copies protected elements of Plaintiffs' copyrighted materials in violation of the exclusive rights created by § 106 of the Copyright Act, 17 U.S.C. § 106, and thus constitutes willful copyright infringement under § 501 of the Copyright Act, 17 U.S.C. § 501.

72.    Plaintiffs have sustained monetary damages in an amount to be proven at trial, as the proximate result of Defendants' acts of copyright infringement.

73.    Unless enjoined by this Court, Defendants will continue to infringe Plaintiffs' copyrighted materials, thereby causing Plaintiffs immediate and irreparable injury for which they have no adequate remedy at law.

## FIFTH CAUSE OF ACTION
### (Violations of the Utah Unfair Practices Act)

74.    Plaintiffs repeat and reallege the preceding paragraphs of this Complaint as if fully set forth herein.

75.    By offering for sale and selling counterfeit SeroVital dietary supplement products in the State of Utah, Defendants have knowingly and intentionally indicated that such products have sponsorship, approval and/or performance characteristics and benefits that such products do not have, namely, that they are genuine, authentic SeroVital dietary supplement products emanating from Plaintiffs.  Such acts by Defendants constitute false and deceptive acts in violation of the Utah Unfair Practices Act, Utah Code Ann. § 13-5a-101 *et seq.*

76.    Plaintiffs have sustained monetary damages in an amount to be determined at trial, as the proximate result of Defendants' violations of the Utah Unfair Practices Act, Utah Code Ann. § 13-5a-101 *et seq.*

77.    Unless enjoined by this Court, Defendants will continue to violate the Utah Unfair Practices Act, Utah Code Ann. § 13-5a-101 *et seq.,* thereby causing Plaintiffs immediate and irreparable injury for which they have no adequate remedy at law.

## SIXTH CAUSE OF ACTION
### (Intentional Interference with Existing and Prospective Business Relations)

78.     Plaintiffs repeat and reallege the preceding paragraphs of this Complaint as if fully set forth herein.

79.     Plaintiffs currently have contracts and/or business relations with authorized product manufacturers and authorized resellers pertaining to and involving the manufacture, sale, marketing and distribution of of authentic SeroVital dietary supplement products that are beneficial and of high value to Plaintiffs.

80.     The contracts and/or business relations with authorized product manufacturers and authorized resellers pertaining to and involving the manufacture, sale, marketing and distribution of the Products are beneficial and of high value to Plaintiffs.

81.     On information and belief, Defendants are aware of Plaintiffs' contracts and/or business relations with authorized product manufacturers and authorized resellers relating to the manufacture, distribution, marketing and sale of authentic SeroVital dietary supplement products.

82.     Defendants' unlawful advertising, offering for sale and sale of counterfeit SeroVital dietary supplement products have intentionally interfered with Plaintiffs' existing and potential business relations including, but not limited to, the value of Plaintiffs' contracts and/or business relations with authorized product manufacturers and authorized resellers of authentic SeroVital dietary supplement products.

83.     Plaintiffs have been damaged by Defendants' intentional interference with existing and prospective business relations and are entitled to recover actual damages, punitive damages, and reasonable attorney fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

(1)    The Court enter judgment that Defendants have infringed Plaintiffs' exclusive rights in the trademark SEROVITAL under § 32(1) of the Federal Trademark Act, 15 U.S.C. § 1114(1), and at common law by the advertising, offering for sale, distribution and sale of dietary supplement products under counterfeit reproductions of Plaintiffs' trademark SEROVITAL; Defendants acted with full  knowledge that said goods are sold under a trademark which is a counterfeit reproduction; Defendants jointly have competed unfairly with Plaintiffs and falsely advertised that Defendants are selling authentic SeroVital in violation of § 43(a) of the Federal Trademark Act, 15 U.S.C. § 1125(a), and at common law; Defendants have infringed Plaintiffs' protected copyrighted material under § 501 of the Copyright act, 17 U.S.C. § 501 and Plaintiffs' common law copyrights; Defendants have engaged in violations of the Utah Unfair Practices Act, Utah Code Ann. § 13-5a-101 *et seq.*; Defendants have intentionally interfered with Plaintiffs' existing and prospective business relations; and Defendants have otherwise injured Plaintiffs' business reputation in the manner complained of herein.

(2)    Defendants and each of their respective agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert therewith, be preliminarily and permanently enjoined from:

    (a)    Using any counterfeit reproduction of the trademark SEROVITAL or any other reproduction, counterfeit, copy or colorable imitation of said mark or otherwise infringing the trademark SEROVITAL;

    (b)    Competing unfairly with Plaintiffs or otherwise injuring Plaintiffs' business reputation in the manner complained of herein;

    (c)    Infringing Plaintffs' protected copyrighted material;

    (d)    Falsely advertising that Defendants are selling authentic SeroVital products;

(e)     Violating the Utah Unfair Practices Act, Utah Code Ann. § 13-5a-101 *et seq.*; and

(f)     Intentionally interfering with Plaintiffs' existing and prospective business relations.

(3)     Defendants be temporarily restrained, pending a hearing on Plaintiffs' entitlement to a preliminary injunction, from manufacturing, importing, offering for sale, distributing, selling and/or otherwise disposing of any counterfeit SeroVital dietary supplement products in their possession, custody or control.

(4)     Pursuant to § 36 of the Federal Trademark Act, 15 U.S.C. § 1118, Defendants be directed to deliver up for destruction or other disposition by Plaintiffs all dietary supplement products and all advertisements, price lists, product brochures, labels, signs, prints, decals, packages, boxes, cartons, wrappers, receptacles, and all other materials in the possession, custody or under the control of Defendants which bear any counterfeit or otherwise infringing reproductions of the trademark SEROVITAL, or any other reproductions, counterfeit, copy or colorable imitation of said trademarks and all plates, molds, matrices, and any other means of making or duplicating the same.

(5)     Defendants be required to pay to Plaintiffs the damages, both compensatory and statutory, which Plaintiffs have sustained as a result of Defendants' acts of trademark infringement, unfair competition, false advertisement, copyright infringement, violations of the Utah Unfair Practices Act, Utah Code Ann. § 13-5a-101 *et seq.*, and/or intentional interference with Plaintiffs' existing or prospective business relationships.

(6)    All damages Plaintiffs have sustained as a result of Defendants' acts of trademark infringement and/or unfair competition and false advertisement, be trebled pursuant to § 35(b) of the Federal Trademark Act, 15 U.S.C. § 1117(b).

(7)    Defendants be required to pay to Plaintiffs as punitive damages in an amount that the Court may deem just.

(8)    Pursuant to § 35(a) of the Federal Trademark Act, 15 U.S.C. § 1117(a), as amended, Defendants be required to account for and pay to Plaintiffs the profits Defendants have realized which are attributable to Defendants' acts of trademark infringement and/or unfair competition and false advertisement complained of herein, and that said profits be trebled pursuant to § 35(b) of the Federal Trademark Act, 15 U.S.C. § 1117(b).

(9)    Plaintiffs be awarded such pre-judgment and post-judgment interest, as permitted by law.

(10)    Defendants be required to pay to Plaintiffs both the costs of this action and, in view of the exceptional nature of this case, Plaintiffs' reasonable attorneys' fees in accordance with § 35(a) of the Federal Trademark Act, 15 U.S.C. § 1117(a).

(11)    A constructive trust be imposed on any income received by Defendant and those acting in concert with Defendant, from the sale of counterfeit SeroVital dietary supplement products.

(12)    Plaintiffs be granted such other, different and further relief as this Court deems just, equitable and proper.

DATED this 17th day of March, 2026.

PRICE PARKINSON & KERR, PLLC


/s/ Alan W. Dunaway                    -
Alan W. Dunaway

*Attorneys for Plaintiffs*